UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY R. XAVIER,<br><br>        Plaintiff,<br><br>    v.<br><br>S. M. ROCHE, et al.,<br><br>        Defendants. | No.  2:09-cv-0783 KJM CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

    Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983.  This action proceeds on the Fourth Amended Complaint filed May 19, 2014, in which plaintiff alleges that medical staff at High Desert State Prison ("HDSP") were deliberately indifferent to his serious medical needs following surgery on plaintiff's finger in 2006.  (ECF No. 74 ("FAC").)  The court found the FAC to state cognizable claims against defendants Weaver (formerly French) and Friend.  (ECF No. 77.)

    Before the court is defendants' January 13, 2015 motion for summary judgment (ECF No. 114), which has been briefed by the parties (ECF Nos. 119 & 120).  For the reasons discussed below, the undersigned will recommend that defendants' motion be granted in part and denied in part.

////

1

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u>

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

III. Analysis

A. Allegations

In his verified complaint, plaintiff alleges as follows:

At all relevant times, plaintiff was an inmate at HDSP, where Weaver worked as a nurse practitioner and Friend as a registered nurse. (FAC, ¶¶ 4-7.) On May 30, 2006, plaintiff underwent surgery to repair a fractured joint in the ring finger of his right hand. (Id., ¶¶ 9-10.) "The surgery was performed . . . with no complications or serious side effects." (Id., ¶ 10.) Plaintiff returned to HDSP that day with post-operative instructions that included "Vicodin 4 to 6 hours for pain" and "Keflox 500 mg." (Id., ¶ 11.)

"Defendant [Weaver] made the conscious decision to change Plaintiff's ordered pain medication from Vicodin every 4 to 6 hours to ibuprofen and acetaminophen." (Id., ¶ 12.) After being processed at the Correctional Treatment Center, plaintiff was returned to his cell in

administrative segregation with these non-prescription medications instead of Vicodin. (Id., ¶ 13.) Later that evening, plaintiff awoke with excruciating pain in his hand, which did not subside for 72 hours regardless of how many ibuprofen or Tylenol plaintiff consumed. (Id., ¶ 14.)

The next day, plaintiff spoke to defendant Friend about the health services request form he had submitted that morning. (Id., ¶¶ 15-16.)

> Plaintiff informed defendant Friend that he was in extreme pain and that he was unable to flex and move his hand as instructed by [orthopedic surgeon] Dr. Kaiser. Plaintiff also informed defendant Friend that the Ibuprofens and Tylenols were ineffective and that he needed a stronger pain medication.
>
> Defendant Friend documented plaintiff's complaints, took his blood pressure readings, took plaintiff's temperature and told plaintiff, 'You don't look like you're in pain. Continue taking your Tylenols and eat lots of food.'

(Id., ¶¶ 16-17.) After meeting with other medical staff, "there was no decrease in Plaintiff's pain and soreness." (Id., ¶ 25.) At a June 23, 2006 follow-up visit with Dr. Kaiser, plaintiff explained that he had not received the pain medication he was prescribed. (Id., ¶ 18.) Dr. Kaiser instructed plaintiff to start working on the motion of the repaired joint, ordered physical therapy, and gave plaintiff a therapeutic band to assist in recovering mobility. (Id., ¶ 18-19.)

B. Facts

In determining whether summary judgment is appropriate, the court considers the following record facts:

In 2006, defendant Weaver worked as a nurse practitioner at HDSP. Based on her personal knowledge, defendant Weaver declares:

> The CDCR has created policies and procedures for dispensing of medications. At High Desert, for security reasons, inmates are not allowed to be given narcotic medications that they can take back to their cell or the yard. The purpose is to prevent recreational use of narcotics and drug trafficking among the inmate population. In order for an inmate to receive narcotics, they must be admitted to the [Correctional Treatment Center, "CTC"], where prison staff can administer the drugs to ensure that they are taken as needed by the patient and are not used recreationally or for trade/sale.

4

(ECF No. 114-2, Weaver Decl., ¶ 3.)[1]  Defendants do not supply a written copy of prison's narcotics policy.

Defendant Weaver does not recall plaintiff, but is "familiar with the type of situation he is describing": "The CTC was apparently full and there was no space for Mr. Xavier" when he returned from outside surgery.  (Id., ¶¶ 2-3.)

> If the CTC was full, then a patient such as Mr. Xavier would have to return to the CTC emergency triage unit every time he needed a pill to be dispensed. . . . Based on the allegations of the FAC, it appears that Mr. Xavier was caught up in the situation wherein he could not be admitted to the CTC so prison medical staff were prohibited from providing him with a supply of narcotics that he could take to his cell or the yard.

(Id., ¶¶ 3-4.)

Defendants submit a copy of the post-surgical instructions in which plaintiff's surgeon, Dr. Kaiser, recommended Vicodin every 4 to 6 hours for pain.  (ECF No. 114-3, Weaver Decl., Ex. A.)  Weaver acknowledges that Dr. Kaiser recommended Vicodin after plaintiff's surgery. (Weaver Decl., ¶ 5.)  Even so, she declares,

> I could only dispense medications consistent with CDCR's policies and procedures relating to narcotics medications.  I did fill out a 'physician's order' in which I asked that Mr. Xavier immediately be given Cephalexin, Ibuprofen and Acetaminophen for pain and swelling.  Those were the only medications that I could give him based upon the situation and CDCR policies that existed at that time.  I asked that he return to the TTA for a follow up within 2 days.

(Id., ¶ 5.)  Weaver had no involvement in creating the CDCR's narcotics policies and had no alternative but to comply with those policies.  (Id., ¶ 6.)  She "gave him all of the medications that I could for his pain and swelling."  (Id.; see Weaver Decl., Ex. A.)

Defendant Friend worked at HDSP as a Registered Nurse.  Friend declares that she examined and treated plaintiff on a single occasion on May 31, 2006, the day after his return from surgery.  (ECF No. 114-4, Friend Decl., ¶ 3.)  Medical records indicate that, on that morning around 9:00 a.m., plaintiff submitted a health care services request form stating that his hand was

---

[1] Defendants characterize the CTC as the "on-site hospital" and the Treatment and Triage Area ("TTA") as the "on-site emergency room."  (ECF No. 120 at 2.)

5

1   in extreme pain. (Id., ¶ 3; see ECF No. 114-5, Friend Decl., Ex. A.) The form was reviewed by a
2   nurse in the clinic at 12:05 p.m.; however, Friend worked the evening shift and was not at HDSP
3   at that time. (Id.) From the records, Friend concludes that the day nurse determined that
4   plaintiff's condition was not emergent and that he did not immediately need to be seen by a
5   doctor on the day shift; thus the form was left for the evening shift to follow up for further
6   evaluation. (Id.) The bottom of the form indicates that Friend saw plaintiff at 7:05 p.m. (Id.)

After reviewing the records from the day shift, Friend interviewed and examined plaintiff. (Id., ¶ 4.) Plaintiff displayed normal circulation and range of motion, and stated his current pain level was at a level of eight (8) out of a possible ten (10). (Id.) Plaintiff asked for a stronger pain medication (Vicodin), and Friend "explained that I only had authorization to dispense the medications ordered by CDCR doctors. That any modification had to come through their office and that he should make his request to the doctor." (Id.) Friend declares that plaintiff's condition did not appear to be an emergency, and he already had some pain medications in his cell. (Id., ¶ 5.) As plaintiff had already received acetaminophen and ibuprofen for his pain, Friend "instructed him on the use of his medications and advised him to seek further care if his condition worsened[.]" (Id.) "I made sure that he had all of the appropriate medications I was authorized to administer and I referred him to the physician's clinic for a follow up the next day. There was nothing else that I could do for Mr. Xavier at that time." (Id.)

Plaintiff does not dispute that CDCR has a policy at HDSP which prohibits inmates from possessing narcotic materials in their cells or in the yard. (ECF No. 119 at 23.) Nor does he dispute that Weaver had no choice but to comply with this policy. (Id. at 24.) However, plaintiff denies he was requesting to take narcotic medication back to his cell in administrative segregation. (Id. at 25.)

C. Legal Standard

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d

1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439 F.3d at 1096. First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id., citing Estelle, 429 U.S. at 104.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839.

A showing of merely negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106. A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Furthermore, mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case." Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060.

D. Discussion

Deliberate indifference may be shown when prison officials ignore express orders from a prisoner's treating physician. Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999). However, in some medical indifference cases, it may be important to balance the "competing

7

tensions" between "the prisoners' need for medical attention and the government's need to maintain order and discipline," in determining the prison officials' subjective intent. Clement v. Gomez, 298 F.3d at 905 n. 4.

Here, defendant Friend declares that she "only had authorization to dispense the medications ordered by CDCR doctors" and "any modification had to come through their office." See Robinson v. Catlett, 725 F. Supp. 2d 1203, 1209-10 (S.D. Cal. July 19, 2010) (prison nurse was not deliberately indifferent for failing to dispense pain medication where nurse "had no involvement in recommending, approving, or ordering the medication"). Because there is no evidence that Friend was authorized to prescribe or dispense Vicodin in her sole encounter with plaintiff on the evening of March 31, 2006, the undersigned concludes that summary judgment should be granted as to this defendant.

Defendant Weaver filled out a physician's order for plaintiff to receive nonprescription pain medications on May 30, 2006. However, Weaver declares that she, too, was unauthorized to order Vicodin for plaintiff under prison policy and the circumstances: "The CTC was apparently full and there was no space for Mr. Xavier." Weaver was aware that plaintiff had undergone surgery earlier that day and that his surgeon had recommended Vicodin for post-surgical pain. (See ECF No. 114-3.) Yet her notes do not appear to show that she checked to see if the CTC or TTA could dispense Vicodin to plaintiff, either at that time or later that day. Nor does it appear that Weaver considered any alternative way of following Dr. Kaiser's recommendation that did not involve plaintiff taking Vicodin back to his cell. Weaver scheduled a follow-up appointment in the TTA within two days; however, the worst of plaintiff's pain could be expected soon after surgery, when the anesthetic wore off. Plaintiff alleges that, later that night, his post-surgical pain became intense and persisted for 72 hours.

Drawing all reasonable inferences in plaintiff's favor, the undersigned concludes that there is a genuine dispute of fact as to whether Weaver was deliberately indifferent to plaintiff's serious medical needs on May 30, 2006.

////

////

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 114) be granted as to defendant Friend and denied as to defendant Weaver.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 11, 2016

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / xavi0783.sj